UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ANTHONY BROWN, a/k/a David Wynter ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) | No. 10 C 7359 |
| GUY PIERCE, Warden, ) Pontiac Correctional Center ) ) | Hon. Rebecca R. Pallmeyer |
| Respondent. ) | |

# MEMORANDUM OPINION AND ORDER

Following a bench trial in 2005, Petitioner Anthony Brown, a/k/a David Wynter ("Petitioner"), was convicted of residential burglary and sentenced as a Class X offender to twelve years' imprisonment. He now seeks habeas corpus relief under 28 U.S.C. § 2254. Petitioner principally contends that his indictment was invalid because the prosecutor presented allegedly fabricated evidence to the grand jury, and that trial and appellate counsel provided ineffective assistance of counsel by failing or refusing to raise that point. For the reasons set forth below, Petitioner's petition is denied.

## BACKGROUND

**I.    Factual Background**

On federal habeas review, the court presumes the state court's factual determinations to be correct unless a petitioner shows otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *McCarthy v. Pollard*, 656 F.3d 478, 483 (7th Cir. 2011). Petitioner provides no evidence to rebut the state court's factual findings. Accordingly, this court adopts the factual account set forth in the opinion of the Illinois Appellate Court on postconviction petition appeal in *People v. Brown*, No. 1-08-2915 (Ill. App. Ct. 1st Dist. June 11, 2010). (Postconviction Order, Ex. K to Resp't's Answer, at 2-5.)

On June 9, 2003, Lieutenant Donald Holmen of the Chicago Police Department responded to a dispatch regarding a burglary in progress; the dispatch included a description of the alleged burglar. (*Id.* at 2.) Holmen drove his police vehicle to the vicinity where he observed Petitioner, who fit the burglar's description, walking down the alley abutting the burglarized apartment. (*Id.*; Trial Tr., Ex. T to Resp't's Answer, at R-16 to -17.) When Holmen ordered Petitioner to halt, Petitioner ran and Holmen pursued, ultimately apprehending Petitioner in the stairwell of an adjacent building. (Postconviction Order at 2.) Holmen performed a protective pat-down search after handcuffing Petitioner (Trial Tr. at CC-16, -21), finding a cellular telephone and some jewelry that, along with a grey jacket Petitioner was wearing at the time of arrest, belonged to the tenants of the burglarized apartment. (Postconviction Order at 4.)

Police officers walked Petitioner back to the scene of the crime, where they conducted "show-up" identifications with two eyewitnesses. The first, Francisco Rueda, then age seven, had called the police when he observed a man enter a neighboring apartment through the neighbor's window. (*Id.* at 3.) Rueda identified Petitioner as the man he saw at the show-up and later at trial. (*Id.*) A second witness, Myra Franco, who lived in the same building as the burglarized apartment, had seen a man climbing through the window of the second floor apartment. (*Id.*) The arrest report, written by Officer Audie Manaois (one of the officers at the scene), stated that Franco had positively identified Petitioner. (Arrest Report, Ex. R to Resp't's Answer.) At trial, however, Franco testified that she was unable to identify Petitioner during the show-up because she had never seen the burglar's face. (*Id.*) Officer Manaois testified at trial that he remembered talking with Franco, but that he did not remember Franco identifying Petitioner. (Trial Tr. at GG-36.) The arrest report did not mention Rueda's identification, but Manaois testified at trial that Rueda had identified Petitioner at a show-up. (*Id.* at GG-25.) Based on this record, the Illinois Appellate Court concluded that "[t]he report merely had the wrong name of the witness who identified [Petitioner] as the burglar." (Postconviction Order at 12.)

2

On July 1, 2003, a grand jury returned an indictment charging Petitioner with residential burglary. (Indictment, Ex. R to Resp't's Answer.) Petitioner claims that his trial counsel from the Public Defender's office allowed him to read the grand jury transcript after he was indicted. (Postconviction Order at 7.) Based on his recollection of the transcript, Petitioner contends that the prosecutor procured the indictment by presenting fabricated evidence—specifically, Petitioner contends the prosecutor led the grand jurors to believe that Myra Franco identified Petitioner as the burglar during the show-up. (Pet. for Writ of Habeas Corpus (hereinafter "Pet."), at 5.) The grand jury transcript is not in the record, but, according to the indictment, Detective J. Allan of the Chicago Police Department was the only witness called at the grand jury proceedings. (Postconviction Order at 10; Indictment.) Detective Allan presumably read Officer Manaois's arrest report to the grand jury. (Postconviction Order at 12.)

## II. Procedural Background

In September 2005, following a bench trial, Judge James B. Linn of the Circuit Court of Cook County found Petitioner guilty of residential burglary. (*Id.* at 1; Pet. at 1.) Because Petitioner had several prior felony convictions for residential burglary and attempted burglary (Probation Department Investigative Report, Ex. R to Resp't's Answer, at 3), the court classified him as a Class X offender and sentenced him to twelve years' imprisonment. (Direct Appeal Order, Ex. B to Resp't's Answer, at 1, 3).

On October 11, 2005, Petitioner filed a notice of appeal (Postconviction Order at 5), and counsel was appointed for him from the Office of the State Appellate Defender ("OSAD"). (Mot. to Withdraw as Counsel on Appeal Pursuant to *Anders v. California* ¶ 4, Ex. C to Resp't's Answer.) Petitioner's appointed attorney concluded that an appeal would lack arguable merit, however, and filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). Petitioner filed several responses to that motion in which he contended, among other things, that appellate counsel was ineffective for failing to argue that the indictment was invalid as a result of prosecutorial error

3

before the grand jury. (Direct Appeal Order at 1-2.) At this time, Petitioner also filed several *pro se* petitions with the trial court for discovery, including a request for a copy of the grand jury transcript. The court denied these petitions on April 25, 2007; December 17, 2007; and March 11, 2008. (Postconviction Order at 6.)

On July 27, 2007, the Illinois Appellate Court, First Division, entered an order granting appellate counsel's motion to withdraw and affirming Petitioner's conviction and sentence. (Direct Appeal Order at 3.) The Illinois Supreme Court denied Petitioner's *pro se* Petition for Leave to Appeal ("PLA") on January 13, 2008. (Ex. I to Resp't's Answer.)[1]

On July 14, 2008, Petitioner filed a *pro se* postconviction petition in the state trial court. (*Pro se* Post-Conviction Petition, Ex. J to Resp't's Answer.) He alleged that "(1) the grand jury's indictment was based on known perjured testimony; (2) trial counsel was ineffective for failing to object to the indictment; and (3) appellate counsel was ineffective for failing to raise the issue of the indictment in defendant's direct appeal." (Postconviction Order at 6-7.) The circuit court summarily dismissed the postconviction petition on July 22, 2008. (*Id.* at 7.)

Petitioner, once again represented by OSAD, filed an appeal, arguing that the trial court erred in summarily dismissing the post-conviction petition because Petitioner's argument that trial and appellate counsel provided ineffective assistance of counsel was not "based on an indisputably meritless legal theory or a fanciful factual allegation," as required for summary dismissal under Illinois law. (Brief and Arg. for Pet'r-Appellant, Ex. M. to Resp't's Answer, at 11 (quoting *People v. Hodges*, 234 Ill. 2d 1, 16, 912 N.E.2d 1204, 1212 (2009)).) Notably, Petitioner's appellate brief raises the merits of his argument concerning the grand jury indictment only in the context of whether the argument was so meritless that his *ineffective assistance of counsel* claims deserved summary dismissal. On June 11, 2010, the Appellate Court affirmed the trial court's judgment.

---

[1] In addition to the ineffective assistance of counsel claims he raised at the appellate court level, Petitioner argued in his PLA that the factual variance between the indictment and the proof irreparably impaired defense preparation. (Direct Appeal PLA, Ex. H to Resp't's Answer.)

4

Petitioner filed a *pro se* PLA with the Illinois Supreme Court, raising the same issues he asserted in his postconviction petition in the state trial court (Postconviction PLA, Ex. P to Resp't's Answer), but the Supreme Court denied the PLA on September 29, 2010. (Ex. Q to Resp't's Answer.)

Petitioner filed his first federal petition for writ of habeas corpus (No. 08 C 6602) on November 18, 2008, after the Illinois Supreme Court denied his PLA on direct appeal, but before the Illinois Appellate Court had addressed his postconviction petition appeal. Petitioner's initial federal petition raised four grounds: (1) the allegedly fabricated evidence presented to the grand jury; (2) ineffective assistance of trial counsel; (3) ineffective assistance of appellate counsel; and (4) that the Illinois Appellate Court erred in granting appellate counsel's *Anders* motion. On March 10, 2009, the court dismissed Petitioner's "mixed" petition without prejudice because it contained both exhausted (claim 4) and unexhausted claims (claims 1-3). Petitioner filed another petition raising the same claims (No. 09 C 1861) on March 19, 2009, and the court once again dismissed without prejudice on April 28, 2009. Petitioner refiled the petition on May 1, 2009, raising claims (1) and (4), but the court issued an order terminating the case pursuant to its April 28, 2009 order.

On November 15, 2010, Brown filed this petition (No. 10 C 7359) after the Illinois Supreme Court denied his postconviction petition PLA. Petitioner raises the following claims: (1) the indictment was invalid because the prosecutor obtained it by presenting allegedly fabricated evidence to the grand jury in violation of Petitioner's Fourteenth Amendment right to due process; (2) trial and appellate counsel provided ineffective assistance of counsel by failing to argue this point; (3) the state appellate court erred in granting direct appellate counsel's *Anders* motion to withdraw; and (4) the trial court erred in dismissing Brown's postconviction petition and denying his request for a copy of the grand jury transcript. For the reasons explained here, the petition is denied.

## DISCUSSION

A writ of habeas corpus is appropriate only when the state court decision in question is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). Accordingly, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). Instead, a federal habeas court has power only to remedy "violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene." *Id.* In determining whether the state court incorrectly applied federal law, federal courts are "*not* permitted to substitute [their] independent judgment as to the correct outcome," but "must only ask if the state-court decision was reasonable. Or, to put it slightly differently, [federal courts] must determine that the state-court decision was both incorrect *and* unreasonable before [they] can issue a writ of habeas corpus." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (footnote omitted).

Furthermore, a federal court may consider a habeas petition only if a petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, "the petitioner must assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009). "Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." *Id.* (citing *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007)). Although courts liberally construe *pro se* petitions, "[t]he procedural default doctrine precludes federal review of a state court's habeas decision . . . when the federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred." *Ward v. Jenkins*, 613 F.3d 692, 696-

6

97 (7th Cir. 2010); *see also Johnson v. Hulett*, 574 F.3d 428, 433 (7th Cir. 2009). Courts may deny a petition on the merits notwithstanding procedural default. 28 U.S.C. § 2254(b)(2).

**I.     Grand Jury Indictment**

Regardless of whether Petitioner's claim is procedurally defaulted,[2] his claim that alleged prosecutorial misconduct before the grand jury violated his due process rights is without merit. There is no clearly established Supreme Court precedent providing state prisoners a due process right to be indicted by a grand jury solely on truthful testimony. *See Anderson v. Sec'y for Dept. of Corr.*, 462 F.3d 1319, 1327 (11th Cir. 2006) ("There is no Supreme Court precedent clearly establishing a constitutional rule that, irrespective of prosecutorial misconduct, an indictment must be dismissed because of perjured grand jury testimony where the perjurious testimony is not repeated before the petit jury which convicts."); *Goodrich v. Hall*, 448 F.3d 45, 49 (1st Cir. 2006) ("[T]he Supreme Court has not defined the circumstances in which impropriety involving even a federal grand jury can ever lead to dismissal of an indictment once a petit jury has returned a verdict of guilt."). Indeed, there is no federal right to indictment by grand jury on state charges at all. *See Alexander v. Louisiana*, 405 U.S. 625, 633 (1972) ("[T]he Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States."); *Bae v. Peters*, 950 F.2d 469, 477 (7th Cir. 1991) (observing that a state court defendant "had no federal constitutional right to be indicted by a grand jury").[3]

---

[2]     Respondent argues that Petitioner did not raise the indictment's validity as a "free-standing" claim before the Illinois Appellate Court, independent of his ineffective assistance of counsel claims. Indeed, Petitioner's *pro se* direct appeal appears to have addressed the issue of the indictment in the context of his ineffective assistance of counsel claim, as did the postconviction petition appeal, for which Petitioner was represented by counsel. On the other hand, Petitioner's *pro se* postconviction petition and both of his PLAs raised the issue of the indictment separately. Further, on appeal from denial of the postconviction petition, the Appellate Court appeared to reach the merits of Petitioner's argument concerning the indictment's validity. The court need not resolve the question of procedural default, however, because the grand jury issue has no substantive merit.

[3]     In the federal grand jury context, clearly established Supreme Court precedent provides that errors in grand jury proceedings are not cause to reverse a conviction. A guilty verdict
(continued...)

7

Absent a constitutional right to grand jury indictments for state criminal defendants, states that do choose to indict by grand jury need only comply with general procedural due process principles, applicable to the states through the Fourteenth Amendment—namely, "'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.'" *Bae*, 950 F.2d at 478 (quoting *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)); *see also Kaczmarek v. Rednour*, 627 F.3d 586, 596 (7th Cir. 2010) ("The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense."). As applied to state criminal indictments, "[s]o long as the defendant has received adequate notice of the charges against him so that he has a fair opportunity to defend himself, the constitutional requirement is met." *Bea*, 950 F.2d at 478. There is no question in this case that the indictment satisfies this minimal notice requirement; the indictment identifies Anthony Brown and states the charge of residential burglary, the date on which the burglary occurred, and the address of the burglarized apartment. Plaintiff's allegation of prosecutorial misconduct before the grand jury, even if true, had no effect on this constitutionally adequate notice.

## II.     Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claims—predicated on the failure of his trial and appellate counsel to challenge the validity of the indictment—are likewise without merit. To establish ineffective assistance, a petitioner must demonstrate both that his attorney's performance fell below an objective standard of reasonableness and that, as a result, he suffered prejudice. *Wyatt v. United States*, 574 F.3d 455, 457-58 (7th Cir. 2009). Regarding the performance prong,

---

[3](...continued)
"render[s] harmless any conceivable error in the charging decision that might have flowed from the violation." *United States v. Mechanik*, 475 U.S. 66, 73 (1986); *see also United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005) ("Even if errors in the grand jury proceedings would have justified the district court in dismissing the indictment prior to trial, the petit jury's subsequent conviction of [the defendant] rendered these errors harmless beyond a reasonable doubt.").

a petitioner "must overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). With respect to the prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different"; that is, "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, "[t]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

This "highly deferential" standard is even more difficult for a petitioner to meet when a federal habeas court reviews a state court's decision rejecting the ineffective-assistance-of-counsel claim. *See Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly so.'" (citations omitted)). The question for a federal habeas court is "whether the state court's application of the *Strickland* standard was unreasonable," not whether the state court's application was incorrect. *Id.* at 785. Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Illinois Appellate Court addressed Petitioner's claims that trial and appellate counsel provided ineffective assistance by failing to argue that his grand jury indictment was predicated on perjured testimony. On direct appeal, limited to the issue of appellate counsel's performance, the court held that "it is not incompetence for counsel to refrain from raising those issues, which in counsel's judgment, are without merit." (Direct Appeal Order at 2.) The court further noted that the record squarely defeated Petitioner's assertion that appellate counsel never considered challenging the indictment's validity; correspondence between Petitioner and appellate counsel refer specifically to the merits of that argument. The correspondence shows that counsel concluded, albeit without

9

the aid of the grand jury transcript, that challenging the indictment on appeal would not likely be fruitful. (*Id.*; Letter from Adreienne River, Assistant Appellate Defender, to Anthony Brown of 12/18/2006, Ex. E to Resp't's Answer.)

Petitioner raised this issue again in his postconviction petition. On appeal from denial of that petition, the court concluded that Petitioner made no showing of prejudice.[4] The court likened Petitioner's claim to the claim in *United States v. Mechanik*, 475 U.S. 66, 70 (1986), where the Supreme Court held that after a petit jury convicts a criminal defendant, errors in federal grand jury proceedings are harmless beyond a reasonable doubt. (Postconviction Order at 11.) Furthermore, the court noted that under Illinois law, Petitioner needed to prove that a state actor intended to materially mislead the grand jury in order to establish a due process violation. (*Id.* at 11-12); *see People v. Hart*, 338 Ill. App. 3d 983, 991, 789 N.E.2d 905, 911 (2d Dist. 2003). The court concluded that the error in the grand jury proceeding did not rise to the level of an "unequivocally clear denial of due process," *People v. Lawson*, 67 Ill. 2d 449, 456, 367 N.E.2d 1244, 1247 (1977), because Petitioner presented no evidence that Detective Allen knew that Officer Manaois's arrest report mistakenly referenced Franco as the identifying witness, nor any evidence that Manaois intentionally wrote the wrong name in the report. (Postconviction Order at 11-12.) Rather, the court concluded that the arrest report was simply mistaken as to the name of the witness who positively identified Petitioner. (*Id.* at 12.) Thus, the court held Petitioner's postconviction petition properly dismissed because it was "based on an undisputably meritless legal theory and defendant . . . failed to prove the gist of a constitutional claim because defendant's sixth amendment right to effective counsel was not violated." (*Id.*)

Petitioner has not established that the state courts misapplied *Strickland*. The Illinois Appellate Court's conclusion that Petitioner did not satisfy the prejudice prong of the *Strickland*

---

[4] It is not clear why the Illinois Appellate Court did not dismiss Petitioner's ineffective assistance of counsel claims on *res judicata* grounds, given that the court had considered similar arguments on direct appeal, at least concerning appellate counsel's performance.

analysis is not unreasonable. Although Franco was mistakenly listed as the eyewitness who positively identified Petitioner, trial counsel's failure to challenge the indictment did not prejudice Petitioner; the error in the report was inadvertent, Franco testified at trial that she did not positively identify Petitioner at the show-up, and other evidence provided independent probable cause for the indictment (including Rueda's identification, Petitioner's flight from the police, and Petitioner's possession of burglary proceeds). In light of these facts, the Appellate Court reasonably concluded that the prosecutor, in presenting the arrest report, did not intend to materially mislead the grand jury. Moreover, as Respondent points out, the relevance of the arrest report in establishing probable cause "was that *a* witness identified Brown, not that it was Franco who did so." (Resp't's Answer at 29-30.)

The record supports the Illinois courts' conclusion that appellate counsel did not act unreasonably in failing to raise a claim that trial counsel was ineffective. Furthermore, appellate counsel's refusal to challenge the indictment on appeal could not prejudice the Petitioner where the indictment gave sufficient notice under the due process clause of the Fourteenth Amendment and where the Illinois court adopted federal law providing that errors in grand jury proceedings are presumptively harmless upon conviction. Therefore, Petitioner has failed to meet the heavy burden to establish that the state courts' application of *Strickland* was unreasonable.

### III. *Anders* Motion

Neither has Petitioner established that the state courts unreasonably misapplied *Anders* when granting direct appellate counsel's motion to withdraw. The Supreme Court has held that appointed appellate counsel may petition a court for leave to withdraw where counsel finds a defendant's "case to be wholly frivolous, after a conscientious examination of it." *Anders*, 386 U.S. at 744. Counsel's *Anders* brief should:

> (1) identify, with record references and case citations, any feature of the proceeding in the district court that a court or another lawyer might conceivably think worth citing to the appellate court as a possible ground of error; (2) sketch the argument for reversal that might be made with respect to each such potential ground of error; and

11

> (3) explain why he nevertheless believes that none of these arguments is nonfrivolous.

*United States v. Edwards*, 777 F.2d 364, 366 (7th Cir. 1985).  Although these imperatives do not "require counsel to submit arguments as detailed as those that would be in a merits brief . . . counsel must at least outline the arguments that he will opine are frivolous, and briefly explain the basis for that opinion."  *United States v. Fernandez*, 174 F.3d 900, 901 (7th Cir. 1999); *see also United States v. Palmer*, 600 F.3d 897, 898 (7th Cir. 2010) ("An *Anders* submission provides [assurance that counsel thoroughly evaluated the record] when the supporting brief, at a minimum, fully explains the nature of the case.").

Once counsel presents a copy of the brief to the defendant and defendant is given an opportunity to respond, a court may grant counsel's motion to withdraw after the court conducts "a full examination of the proceedings, to decide whether the case is wholly frivolous."  *Anders*, 386 U.S. at 744.  A court need not, however, "conduct an independent review of the record to determine whether a more ingenious lawyer might have found additional issues that may not be frivolous."  *United States v. Tabb*, 125 F.3d 583, 584 (7th Cir. 1997).  Of course, because this case is before the court on federal habeas review, the question before this court is whether the Illinois Appellate Court's decision to grant appellate counsel's motion to withdraw was an unreasonable application of *Anders*.

OSAD's brief in support of its motion to withdraw complied with the requirements of *Anders* and *Edwards*.  After giving an account of the facts and the testimony given at Petitioner's trial, the brief provides legal analysis of several issues considered by his appellate counsel, but found to be without legal merit, including whether Officer Holmen validly stopped Petitioner when he fled, whether the show-up procedure was impermissibly suggestive, whether Petitioner waived his right to a jury trial, whether the prosecution proved guilt of residential burglary beyond a reasonable doubt, and whether Petitioner was properly sentenced as a Class X felon.  (*Anders* Brief, Ex. C to Resp't's Answer.)  Petitioner raised several objections to the *Anders* brief, including that appellate

12

counsel failed to argue that the indictment was invalid as a result of prosecutorial misconduct before the grand jury. (Brief and Mem. in Supp. of Mot. to Object to Counsels['] Leave to Withdraw as Counsel on Appeal, Ex. D to Resp't's Answer.) But the Illinois Appellate Court found "no issues of arguable merit to be raised on appeal" after "[h]aving carefully review the record in this case, counsel's brief, and defendant's *pro se* responses." (Direct Appeal Order at 3.) Although the court did not explicitly comment on the merits of Petitioner's argument that his indictment was invalid, the court implied that the argument was meritless by rejecting his ineffective assistance of counsel claim on the grounds "that appellate counsel is under no obligation to brief every conceivable argument on appeal, and that it is not incompetence for counsel to refrain from raising those issues, which in counsel's judgment, are without merit." (*Id.* at 2.)

Petitioner claims that the state court erred by relying on the *Anders* brief when neither appellate counsel nor the state court had access to the grand jury transcript, which Petitioner alleges was necessary to properly evaluate Petitioner's case on appeal. But as this court concluded above, Petitioner's argument that the indictment was invalid is meritless regardless of whether Petitioner is correct that the grand jury transcript would reveal that prosecutors procured the indictment using an arrest report that mistakenly named Franco, rather than Rueda, as the eyewitness. In short, the court finds the Illinois Appellate Court's application of *Anders* to be reasonable.

## IV. Trial Court Errors

Petitioner's remaining grounds are not appropriate for federal habeas review. Petitioner's claim that the trial court erred in denying his postconviction petition does not raise a cognizable claim under federal law. To the extent that this ground raises different issues than Petitioner's claim that the grand jury procedure violated his right to due process under the United States Constitution, those issues are a matter of state law, which this court cannot review. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (observing that states have no obligation to provide for postconviction

relief); *Montgomery v. Melroy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Unless state collateral review violates some independent constitutional right . . . errors in state collateral review cannot form the basis for federal habeas corpus relief.")

Petitioner's final claim—that the trial court erred in denying his requests for a copy of the grand jury transcript—is procedurally defaulted. He petitioned the trial court for the transcript during the course of his direct appeal, but did not challenge the trial court's denial of these petitions, either on direct appeal or on postconviction review. Because Petitioner did not raise the issue throughout one complete round of state court review, and Petitioner has exhausted all state court avenues of review, this court may not decide the issue.

## **CONCLUSION**

For the reasons set forth above, the petition for writ of habeas corpus [8] is dismissed with prejudice. Petitioner's Motion for Production of Documents [27] is denied as moot.

ENTER:

Dated: March 13, 2012

_____
REBECCA R. PALLMEYER
United States District Judge

14